UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60811-CV-COHN

MERLE NORMAN COSMETICS, INC., a
California corporation,

Magistrate Judge Snow

    Plaintiff,

vs.

JOYCE LABARBERA and JANE DOE,

    Defendants.
_____/

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
ORDER DENYING IN PART MOTION TO DISMISS
ORDER REQUIRING PLAINTIFF TO RESPOND TO ISSUE RAISED IN MOTION
ORDER SETTING TRIAL DATE**

THIS CAUSE is before the Court upon Plaintiff's Motion for Preliminary Injunction [DE 3-2] and Defendant Labarbera's Motion to Dismiss [DE 16]. The Court has carefully considered the motions, the credibility of witnesses and argument of counsel and Defendant at an evidentiary hearing on June 21, 2007, and is otherwise fully advised in the premises.

I. FINDINGS OF FACT

Plaintiff Merle Norman, Inc. ("Plaintiff") filed this diversity action against Defendants Joyce Labarbera and "Jane Doe" for various state law claims. As to Defendant Labarbera, Plaintiff's claims are for tortious interference with contract, civil conspiracy, and deceptive and unfair trade practices. The claims against Jane Doe include breach of contract, termination of franchise agreement, civil conspiracy, and deceptive and unfair trade practices pursuant to Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

Plaintiff sells cosmetics through franchised "studios." Their franchise agreements with their studio owners ban resales of its products via the internet. In this case, Plaintiff presented circumstantial evidence that Defendant Labarbera obtained Merle Norman cosmetics from a studio owner ("Jane Doe") and then resold the products via Ebay over the Internet. Plaintiff's evidence consisted of Exhibits 1-6, which contain listings of online auctions conducted on eBay's website by "clldesoto" and "discountcosmeticsandthings" from October 29, 2006 through May 28, 2007.

Plaintiff's corporate employees testified how it monitors internet sales of its products in order to stop such sales. Due to the number of sales and products listed by these eBay vendors, Plaintiff bought products from them to investigate the origins of the sales. In fall of 2006, Plaintiff first became aware of sales on eBay from someone in Davie, Florida. After Plaintiff learned these products were "lesson materials" for studio owners and not products for sale to the public, Plaintiff had Ebay shut down those sales.

In the spring of 2007, Plaintiff again noticed sales from the same seller in Davie. Through a private investigator it frequently employs for this purpose, Plaintiff was able to find out that the seller was Defendant Labarbera. Jerry Marsh, the investigator, visited the home located through public records. Marsh testified that though Defendant was not at home, her sister answered the door and Marsh was able to speak with Defendant over the telephone. Marsh testified that Defendant first refused to tell him her source for the products, then said she got them from a closed down Naples studio, and then stated that the products came from a store near Atlanta, Georgia. Marsh testified that Defendant told him she had checked with an attorney to make sure her

2

sales were legal, and that she knew that Merle Norman franchisees were prohibited from selling products over the internet.

After this conversation, which took place around 9 to 9:30am, Marsh visited the five closest Merle Norman studios, two prior to lunchtime, and two after lunch (a fifth was closed).  None of the owners knew Defendant Labarbera, and denied using the internet to sell products.  At 11:10am, someone from Long Island, a suburban region of New York City, telephoned the Merle Norman 1-800 studio owner help line to ask whether Jerry Marsh in fact worked for Merle Norman Cosmetics.  Marsh testified that he later was able to track the incoming number through Merle Norman's phone bill, and discovered that the number belonged to the husband of a Merle Norman studio owner in Patchogue, New York, on Long Island.   Marsh also testified that public records indicated that Defendant Labarbera used to live 11 miles from Patchogue, New York.

On April 24, 2007, Plaintiff sent Labarbera a cease and desist letter.  However, her sales continued after she changed her Ebay information and continued to make sales.  Plaintiff had a secretary in its outside counsel's office make purchases on May 5, 9, and 20, 2007, from Washington, DC, in which the return email address for the May 5th purchase matched Defendant Labarbera's email from earlier sales.  Declaration of Susan Colleli, ¶¶ 3-4 [DE 7].  The return email for the last two purchases was the same, and the P.O. Box on the return address for both purchases was in Canton, GA, which matched the P.O. Box return address used on the May 5th purchase.  Although the return address was in Canton, GA, the actual mail metered postage was from zip code 33328, in Davie.

On May 28, 2007, Labarbera offered for sale items that were only recently

3

shipped to studio owners, for in-store sale beginning May 15, 2007, according to Merle Norman's witnesses.  Plaintiff's Exhibit 6.  Earlier, Defendant had sold items that were so popular that it was out of stock for 3 months and studio owners had difficulty obtaining it for sale.  Testimony of Gwen Mitsutake; Plaintiff's Exhibit 3.  The testimony also showed that the prices offered by Labarbera were less than retail store prices, indicating that the products were obtained at wholesale prices.

Merle Norman's corporate counsel testified that when the company does identify large Ebay sales of its products, it checks to see if any studio locations closed in that area, as store inventory sometimes is sold at cost.  In this case, only four locations in Florida closed between August of 2006 and May of 2007, and all inventory was returned to Merle Norman.  In addition, the company also checks to see if any shipments were reported stolen.  No thefts were reported for the area.

It is important to note that Labarbera does not deny that she made those sales.  Rather, the disputed issue is whether Labarbera obtained the Merle Norman items she sold over the Internet from a studio owner, or from some other source.  Labarbera testified under oath that she obtains all her Merle Norman products from the Opalocka flea market in Opalocka, Florida.  She provided the address and telephone number of the flea market and a description of the location of the booth where she buys the Merle Norman products.  She could not identify the name of the vendor, other than describing him as a "little Latin guy."  She testified that sometimes he had Merle Norman products for sale, and sometimes he did not.

Plaintiff has yet to identify the "Jane Doe" who it believes is providing Defendant Labarbera with the products which she sells over the internet.  Plaintiff speculates that

4

the telephone call shortly after Jerry Marsh's visit to the Labarbera home is related to Defendant Labarbera, but the studio owner in Patchogue was not named in this action.

## II.  CONCLUSIONS OF LAW

### A.  Motion for Preliminary Injunction

Plaintiff seeks a preliminary injunction under state law to enjoin the Ebay sales of Defendant Labarbera.  In its theories of liability as to Defendant Labarbera, with whom it has no contractual relations, a critical factual element is that she obtained the products from a studio owner.  In order to obtain a preliminary injunction, Plaintiff must establish the following four elements: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to Plaintiff outweighs the threatened harm the injunction may do to the Defendants; and (4) granting the preliminary injunction will not disserve the public interest.  Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir.1994).  Because a "preliminary injunction is an extraordinary and drastic remedy," it is "not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites."  Id. (quoting Northeastern Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir.1990)); see also McDonald's Corp. v. Roberts, 147 F.3d 1301, 1306 (11th Cir. 1998).

Plaintiff did make a sufficient showing regarding the substantial nature of the harm.  Plaintiff focuses its sales through its retail studios on a "Try Before You Buy" theme of encouraging customers to try its cosmetic products in a store with a trained sales person.  For that reason, since 1997 it has contractually banned its studio owners from selling via the internet.   Plaintiff believes that allowing Defendant Labarbera to

continue her sales will only encourage other Ebay vendors to sell Merle Norman products, further diluting its studio-only business plan.  In addition, the threatened harm to Plaintiff in this dilution outweighs the temporary cessation of Labarbera's home-based "second" job.  Finally, if in fact the products were obtained from a studio owner, the public interest would not be disserved to prevent what is best described as aiding and abetting a breach of contract.

However, Plaintiff has failed to show a "substantial likelihood" of success on the merits, as its legal theories against Defendant Labarbera require a showing that she obtained the products from a Merle Norman studio owner.  Plaintiff argues that it has presented sufficient circumstantial evidence of this fact.  First, her volume of over 700 Ebay auctions (i.e., sales) and variety of products for sale indicated more than someone who obtains product from retail purchases.  Second, the text of the product descriptions on her website indicate inside knowledge of Merle Norman products. Third, her attempt to hide her identity by changing email addresses shows some knowledge of her wrongful conduct.  Fourth, Jerry Marsh testified that Labarbera admitted to getting some products from studio owners.  Fifth, the timing of the telephone call to Merle Norman on the same morning verifying the identity of the investigator leads to the conclusion that the Long Island franchise owner is connected to Defendant.  Sixth, Labarbera's sale of new items on her website must have come from a studio owner, as such new items would not have come through a flea market so quickly as a studio owner would have no motive to sell new products at cost to a flea market.  Finally, there were no recent store closings in South Florida which resulted in inventory being sold at cost, and no reported thefts of merchandise.

6

As Plaintiff conceded, the evidence remains circumstantial.  Defendant flatly denied obtaining Merle Norman products from anyone other than the flea market.  Jerry March's testimony regarding his conversation with Labarbera included her statement that the Georgia store owner had no knowledge of her resales, as the lower price in Georgia made Ebay sales still profitable for her.  As for the call to Merle Norman regarding Jerry Marsh, it is just as likely that one of the stores visited that morning by Marsh was the reason for the call.   Labarbera stated that she has not lived on Long Island since she was five years old, and she had Mr. Marsh's card so she did not need to verify for whom he worked.  Defendant defends her changes of seller name on Ebay as an attempt to avoid the harassment that she claims Plaintiff's investigators did to her business, noting that buyers on Ebay can easily find the prior names of a seller.

While the volume, variety, and nature of the products Labarbera offers for sale on Ebay certainly is evidence that she obtained the products from a studio owner, the evidence does not rise to the level required for a showing of "substantial likelihood" of success on the issue.   As this lawsuit progresses, it may be that Plaintiff will ultimately be successful on its claims against Labarbera, but a preliminary injunction is not warranted at this time.

### B.  Defendant's Motion to Dismiss

As her response to the service of the Complaint and Motion for Preliminary Injunction, Defendant Labarbera filed a Motion to Dismiss Complaint for failure to state a claim, which reads to the Court more like an answer denying the Complaint, rather than a motion.   However, the Court will treat the filing as a motion to dismiss.

Defendant raises two legal arguments, in addition to denial of the merits of the claims. She asserts that the "First Sale Doctrine," which is part of federal copyright law, protects her right to sell products lawfully acquired in the stream of commerce. <u>Allison v. Vintage Sports Plaques</u>, 136 F.3d 1443, 1447-48 (11th Cir. 1998). The doctrine has been extended to tort actions such as the right to publicity. <u>Id.</u> In this case, the Plaintiff conceded that if Labarbera's source is a flea market, than she can make the sales in question. However, as discussed above, if Labarbera is working in conjunction with a studio owner to violate the Merle Norman franchise agreement, then it is not clear whether the First Sale Doctrine would protect Labarbera for liability for such sales.

The second legal issue raised by Labarbera is the jurisdictional requirement of an amount in controversy greater than $75,000. As noted above, this is a diversity action. The evidence regarding the amount of sales was not conclusive, but the amount is apparently only in the range of $14,000 to $17,500 (700 sales at an average sale price of $20 to $25 dollars).[1] However, Plaintiff presented evidence regarding loss of goodwill, as Merle Norman has an interest in protecting its studio owners from the company's ban on internet sales. The potential injury of allowing internet sales to flourish does raise the amount in controversy well beyond the actual sales made by Defendant Labarbera. In addition, Plaintiff seeks punitive damages for its civil conspiracy claim, and attorney's fees for its FDUTPA statutory claim. Adding up these additional measures of damages would provide a basis that the amount in controversy

---

[1] This figure is derived from the testimony of Merle Norman's corporate counsel. While many items were for auction below $10.00, other items ranged as high as $100.00. Trial counsel for Merle Norman was asked what the total dollar figure of sales, but did not provide an answer.

is over $75,000.

Finally, as to Labarbera's argument that the Complaint fails to state a claim, the evidence presented and described above does provide a sufficient basis to deny the motion to dismiss. The United States Supreme Court recently clarified the proper pleading standard: "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1969 (2007). In this case, Plaintiff's presentation of circumstantial evidence is sufficient to state its claims.

However, there is a lingering legal issue that has not been addressed by Plaintiffs, and indirectly raised by Defendant regarding the "First Sale Doctrine." Assuming that Defendant did obtain her products from a studio owner, can the claims of tortious interference, civil conspiracy, and the FDUTPA violation all survive if the conduct is essentially aiding and abetting a breach of contract? Before completely denying the motion to dismiss, the Court directs Plaintiff to respond to this argument.[2]

### III. CONCLUSION

In its final argument, Plaintiff offered that if the injunction is entered, an expedited trial of the case should be set. While the Court is denying the injunction, the suggestion for a more expedited trial setting is a fair one. Though the parties have not engaged in formal discovery yet, each side has done a fair amount of investigation into

---

[2] Because Defendant Labarbera is proceeding without counsel, the Court will give some leeway to arguments presented by her. However, the Court notes that even pro se parties must comply with all procedural requirements contained within this Court's Orders, the Federal Rules of Civil Procedure, and the Local Rules of this Court (Local Rules available at www.flsd.uscourts.gov). Despite her success at this stage of the litigation, Defendant is encouraged to seek an attorney to represent her in this case.

9

the disputed facts of this case, which are not complicated. Therefore, the Court will set the case for trial in less than five months, as described below. A more formal trial setting order will follow.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Preliminary Injunction [DE 3-2] is hereby **DENIED**;

2. Defendant Labarbera's Motion to Dismiss [DE 16] is hereby **DENIED in part**, as described above;

3. Plaintiff shall respond to the argument regarding the extent of the protection of the First Sale Doctrine, as described above, by July 9, 2007;

4. The trial in this matter shall be set for the two week period commencing November 5, 2007, with a Calendar Call on Thursday, November 1, 2007 at 1:30pm;

5. A scheduling conference shall be set by Magistrate Judge Snow for July 18, 2007.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 22nd day of June, 2007.

JAMES I. COHN
United States District Judge

Copies furnished to:

Michael Mattson, Esq.
James Rubinger, Esq.

Joyce Labarbera, pro se
12911 SW 15th Manor
Davie, FL 33325